UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AMERICAN NATIONAL INSURANCE
COMPANY,

    Plaintiff,

v.                                      Case No.: 3:07-cv-872-J16TEM

CHRISTOPHER GLASS, DUSTY GLASS,
DIRK GLASS and KRYSTAL GLASS,

    Defendants.
_____/

**ORDER**

Plaintiff's motion for Attorneys' Fees (the "Fees Motion") (Dkt. 24) is before the Court. Plaintiff filed additional material in support of the Fees Motion (Dkts. 33 and 34) and Defendants, Dirk Glass and Krystal Glass (collectively, the "Defendants"), proceeding *pro se*, filed identical responses in opposition (collectively, the "Response") to the Fees Motion. (Dkts. 35 and 36). For the reasons that follow, the Fees Motion (Dkt. 24) is **DENIED**.

    **I.**    **Factual and Procedural History**

Betty Jo Glass purchased two American National annuity policies - policy numbers 14514930 and 14514925 (the "Policies"), effective on July 30, 2004. Ms. Glass's sons, Dusty and Christopher Glass were the original beneficiaries under the Policies - each receiving 50% of the Policies' benefits. On January 17, 2006, American National received two Change of Beneficiary Forms or Service Request Forms (collectively, the "Forms"), one for each of the Policies, purportedly adding Dusty Glass's children, the Defendants, as beneficiaries under the Policies. Under the Forms, the four named beneficiaries would each receive 25% of the Policies' benefits.

Betty Jo Glass died on February 3, 2006. Upon her death, American National paid 50% of the undisputed benefits to Christopher and Dusty Glass. American National claims that entitlement to the remaining 50% of the Policies' benefits is in dispute, thus the need for filing this interpleader action. (Dkt. 1). The Court granted American National's request (Dkt. 5) to deposit the disputed funds, totaling $38,654.08, with the Registry of the Court (the "Interpleader Funds"). (Dkt. 13). The Defendants filed answers (Dkt. 16 and 17) to the Complaint.

Since this interpleader action was filed, Christopher Glass died. (Dkt. 28). Before his death, he filed an answer to the Complaint and a cross-claim against Dusty Glass and the Defendants. (Dkt. 18). Dusty Glass failed to respond to this interpleader action. His failure allowed American National to file a Motion for Default Judgment against him (Dkt. 29), which the Court granted. (Dkt. 31).

On May 21, 2008, the Court discharged American National from this action, but declined to rule on whether American National was entitled to attorneys' fees until the parties provided further documentation and argument in support of their positions. (Dkt. 30).[1] Specifically, the Court reserved judgment on fees and costs to insure that American National was truly a "disinterested" party and was not responsible for "creating the conflicting claims between the Glasses . . . . ." (Dkt. 25 at p. 6).

Following Christopher Glass's death, Defendants along with counsel for Christopher Glass, filed a document with the Court titled "Stipulation for Dismissal of Cross-Claim Without Prejudice." (Dkt. 32) (the "Stipulation"). The Stipulation reads that:

> Christopher Glass, Dusty Glass, Dirk Glass and Krystal Glass, individually and by and through the undersigned attorney, . . . pursuant to Rule 41 approve of the dismissal by Christopher Glass of the Crossclaim For Declaratory Judgment in this action against Dusty Glass, Dirk Glass and Krystal Glass, without prejudice, each party to bear their own attorneys' fees and costs.

---

[1] American National and Defendants filed the requested documentation. (Dkts. 33-36). Counsel for Christopher Glass failed to file any responsive documents.

(Dkt. 32 at p. 1).

**II.     Analysis**

  **A.     Christopher Glass's Death and its Effect on the Disposition of the Cross-claim (Dkt. 18), the Stipulation (Dkt. 32) and this Case**

Plaintiff's counsel informed the Court of Christopher Glass's death on March 14, 2008. (Dkt. 28). Under Fed. R.Civ.P. 25(a)(1), counsel for Christopher Glass had ninety (90) days to file a "motion for substitution." or any action by or against the decedent must be dismissed. Accordingly, the Court will dismiss Christopher Glass's cross-claim. (Dkt. 18). Dismissal of the cross-claim has the effect of rendering the Stipulation (Dkt. 32) moot. The Stipulation was a flawed document for a myriad of reasons. However, because the Stipulation is moot, the Court need not discuss these flaws in-depth. Finally, according to Fed.R.Civ.P. 25(a)(2), this case now proceeds only against the remaining two defendants, Dirk Glass and Krystal Glass.

  **B.     The Fees Motion**

American National claims that it is entitled to the reasonable attorneys' fees and costs it incurred as a result of filing this cause of action and asks the Court's permission to collect those fees from the Interpleader Funds.

As partial justification for filing this suit, American National claimed that "a dispute arose among and between the [interpleader defendants] as to whether the service request forms were valid; and therefore who the proper beneficiaries are with respect to the benefits for each of the policies," thus "[b]y reason of the conflicting claims of the [interpleader defendants], [American National] is subject to competing and inconsistent claims regarding the remaining 50% of the benefits of the policies, and has good cause to believe it is in peril of multiple and inconsistent judgments." (Dkt. 25 at pp. 2-3).

Defendants have presented conflicting positions to the Court regarding American National's self-proclaimed "disinterest." When responding to American National's Motion to Discharge and Motion for Attorneys' Fees (Dkts. 24 and 25), Defendants claimed that "Christopher Glass is the only beneficiary disputing the validity of the service request forms." (Dkts. 25 and 26, p. 1 at ¶ 5). However, in response to the Court's Order regarding Attorneys' fees, Defendants claimed that "[a]fter further investigation of [American National's] Service Request Form, [Defendants believe] that [American National] was negligent on [sic] producing a proper form for additional beneficiaries, and is the cause for this interpleader action, and therefore [Defendants believe American National] should be responsible for its own attorney fees." (Dkts. 35 and 36 at p. 2, ¶ B). Defendants also inform the Court that they strongly disagree with American National's contention that its "forms, policies and actions were not deficient and did not contribute to this interpleader action. [Defendants believe American National] should have provided a second page to the form with [American National's] Logo and with policy numbers on it so as to avoid confusion, rather than stating on the form as seen Exhibits A and B, Dkt. 30, "Use additional paper for additional beneficiaries." (Dkts. 35 and 36, p. 1 at ¶ 2).

Defendants conclude their supplemental documentation with the request that any attorneys' fees awarded be taken from Christopher Glass's portion of the Policies' benefits, which he received prior to his death. Defendants claim that they should not be monetarily penalized by having American National's attorneys' fees taken from their portion of the Interpleader Funds because it was Christopher Glass's "frivolous claim against the remaining 50% of the annuities" that caused this suit to be filed and he "received his portion of the annuities" before his death. (Dkts. 35 and 36, p. 2 at ¶ 3).

In an interpleader action, the award of attorneys' fees and costs lies within the sole discretion of the court. Under normal circumstances, a disinterested stakeholder is entitled to reasonable attorneys' fees for its role in the interpleader litigation. Davis v. Davis, 301 So.2d 154, 157 (Fla. 3d Dist. Ct. App. 1974). These funds are usually awarded from the stake itself. Life Investors Ins. Co. of Am. v. Childs, 209 F.Supp.2d 1255, 1256 (M.D. Ala. 2002). The Eleventh Circuit stated in *In re* Mandalay Shores Co-op. Housing Ass'n, Inc., 21 F.3d 380, 383 (11th Cir. 1994), that at least three reasons justify an award of attorneys' fees in many interpleader actions:

> First, an interpleader action often yields a cost-efficient resolution of a dispute in a single forum, rather than multiplicitous, piecemeal litigation. Second, the stakeholder in the asset often comes by the asset innocently and in no way provokes the dispute among claimants. Third, fees for the stakeholder typically are quite minor and therefore do not greatly diminish the value of the asset.

*In re* Mandalay Shores, 21 F.3d 380 at 383.

There are, however, three well-recognized exceptions to this general rule. Courts often use their discretion to exclude insurance companies from the general "disinterested plaintiff" rule under three separate theories. First, courts have found that insurance companies should not be compensated merely because conflicting claims to proceeds have arisen during the normal course of business. See e.g., Sun Life Assurance Co. of Canada v. Thomas, 735 F. Supp. 730, 732 (W.D. Mich. 1990) (denying an award of attorneys' fees because "conflicting claims to benefits owed by beneficiaries . . . are inevitable"); see also Prudential v. Baton Rouge, 537 F.Supp 1147, 1150-51 (M.D. Ga. 1982) (denying an award of attorneys' fees to insurance company when "claims to the fund [were] of the type that arise in the ordinary course of business") (citations omitted); Minnesota Mutual Life Ins. Co. v. Gustafson, 415 F.Supp. 615, 617-19 (N.D. Ill. 1976) (same).

Second, courts have exempted insurance companies from the general rule and denied them an award of attorneys' fees because insurance companies, by definition, are interested stakeholders;

5

filing the interpleader action immunizes the company from further liability under the contested policy. See Prudential, 537 F.Supp. at 1150-51 ("An interpleader action relieves the company of . . . risk by eliminating the potential harassment and expense of multiplicity of claims and suits . . . [and] discharges the company from all liability in regard to the fund."); Western Life Ins. Co. v. Nanney, 290 F.Supp. 687, 688 (E.D. Tenn. 1968) (denying motion for award of attorneys' fees on similar reasoning); Cogan v. United States, 659 F.Supp.352, 354 (S.D. Miss. 1987) (same).

Third and finally, some courts have exempted insurance companies from the general rule based on the policy argument that such an award would senselessly deplete the fund that is the subject of preservation through interpleader. See Metropolitan Life Ins. Co. v. Jordan, 221 F.Supp. 842, 844 (W.D.N.C. 1963) (denying award of attorneys' fees, asking "Should failure to designate diminish the face amount of the policy to the extent of [interpleading plaintiff's] counsel fee?"); Hunter v. Federal Life Ins. Co., 111 F.2d 551, 556 (8th Cir. 1940) ("[T]here would be no justification for seriously depleting the fund deposited in the court . . . through the allowance of large fees to . . . counsel."); Trustees of Directors Guild of America Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 426 (9th Cir. 2000) ("[T]here is an important policy interest in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it.").

American National claims that it is "disinterested" because it is "not responsible for creating the conflicting claims" between the Glasses. (Dkt. 25 at p. 6).  However, the cross-claim, file by Christopher Glass prior to his death, implicates American National's forms and policies as contributing to the need for this interpleader action. (Dkt. 18).  See Hughes Supply, Inc. v. A.C. Electric Corp. of Lee County, 145 F.R.D. 590, 594 (M.D. Fla. 1993) (finding that in Florida a stakeholder must demonstrate total disinterest in the stake and he also must show that "he did nothing to cause the conflicting claims . . . .").

Specifically, the cross-claim provides that the Forms purportedly executed by Betty Jo Glass were not actually signed by her and was fraudulent, etc.  In addition, Christopher Glass claims that the Forms were "ambiguous, confusing and was not properly executed, signed, witnessed and delivered and accepted by [American National] . . . . (Dkt. 18 at p. 3).

Because the Court has found that the cross-claim must be dismissed, the issues raised within it are now moot.  However, American National revives this issue by claiming that its forms were not deficient and did not appear to have contributed to the need to file this interpleader action.  See Dkt. 33, Ex. A-D.  As noted above, Defendants also revive this issue by claiming that American National's forms, etc. are deficient.

The record makes clear that this was a relatively straightforward case.  Plaintiff's counsel does not claim that the legal services provided were somehow unique or beyond the norm.  According to counsel for American National, 39.6 hours were expended on this action by attorneys and paralegals for Hill, Ward & Henderson, P.A., including 15.7 hours spent on the discharge and attorneys' fees motions.  (Dkt. 34 at p. 2; Ex. A).  When providing the overview of fees, hours and costs associated with this action, counsel for American National failed to provide a calculation of the total amount for the fees and costs requested.  By the Court's calculations American National is seeking attorneys' fees in the amount of $10,174.00 (which reflects the fee adjustment noted in Dkt. 34 at p. 16) and costs in the amount of $1,454.69. An award of the $11,628.69 in total fees and costs requested would be almost one-third of the value of the Interpleader Funds.

The Court finds that counsel for American National are not entitled to an award of fees and costs because 1) American National contributed to the necessity for filing this case and 2) the amount of fees and costs requested would seriously deplete the Interpleader Funds.

Review of the Forms reveals that it is patently deficient as are the two letters (the "Letters") American National sent to Betty Jo Glass acknowledging receipt of the Forms. (Dkt. 34, Exs. C& D). First, the Forms require "additional beneficiaries" to be listed on a separate piece or sheet of paper. As Defendants rightly claim, perhaps it would have been prudent of American National to list all beneficiaries (or any other changes of note) on a single page form with American National's logo, or via a different manner that would not itself contribute to or give rise to claims of fraud, etc. Specifically, the Court finds that the use of the additional page noting a change of beneficiary (without benefit of a logo, notarization, etc.) is confusing and could be easily used for unscrupulous purposes.

American National had the opportunity to clarify the alleged change of beneficiaries when it sent the Letters acknowledging receipt of the Forms to Betty Jo Glass . The Letters do not clearly note the change of beneficiaries from Chris Glass and Dusty Glass (50% to each) to Chris Glass, Dusty Glass, Dirk Glass and Krystal Glass (25%) each. Instead, they are identical form letters containing generic acknowledgments that some type of change has occurred (or allegedly occurred). Based on the foregoing, the Court finds that American National is not the "disinterested party" that it professes to be.

As noted above, the $11,628.69 in total fees and costs requested is almost one-third of the value of the Interpleader Funds. Courts look askance at such requests. See Campbell v. North American Co. for Life and Health Ins., 2007 WL 2209249 (M.D. Fla. 2007)*6 (discussing cases). In Campbell, the court cited to *In re* Mandalay Shores for the proposition that fees and costs awarded in interpleader were typically quite minor. Here, the fees and costs requested cannot be characterized as "minor" and would seriously deplete the Interpleader Funds. Courts have denied awards of fees and costs of 2% or less of the value of interpleader funds or awards that would seriously deplete the

fund. See Campbell at *6 (internal citations omitted).  The Court finds that based on established Eleventh Circuit precedent and case law from this district, the fees and costs requested must be denied.

### III.   Conclusion

For the reasons cited above, the Fees Motion (Dkt. 24) is **DENIED**. Accordingly,  it is **ORDERED** that:

1. Counsel for American National are not entitled to attorneys' fees or costs;

2. The Interpleader Funds deposited with the Court shall be divided into two equal portions and paid to the Defendants, Dirk Glass and Krystal Glass.

3. The Clerk is **DIRECTED** to take any action necessary to disperse the Interpleader Funds in accordance with this Order and to **CLOSE** this case.

**DONE** and **ORDERED** from Chambers in Jacksonville, Florida on this 31st of July 2008.

JOHN H. MOORE II
United States District Judge

Copies to:  Counsel of Record